RECEIVED
IN ALEXANDRIA, LA

AUG 2 2 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DOUGLAS SMITH, <br> Plaintiff | CIVIL ACTION <br> SECTION "P" <br> NO. CV02-2107-A |
| VERSUS | |
| MARK SWAFFORD, et al., <br> Defendants | JUDGE F. A. LITTLE, JR. <br> MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Douglas Smith ("Smith") on September 30, 2002, and amended on April 28, 2003 (Doc. Item 5) and March 12, 2004 (Doc. Item 7). The named defendants are Mark Swafford (Swafford) (a correctional officer employed at the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Elizabeth Green ("Green"), Christine McNeil ("McNeil"), Sgt. Huey Woods,[1] Phil Howard ("Howard"), Nurse Aires ("Aires"),[2] and Dr. Patricia Flaherty ("Flaherty"). Smith alleges that, while he was incarcerated in the Winn Correctional Center ("WCC") in

---

[1] McNeil, Woods, Green, Copeland, and Aires were never served (Doc. Items 22, 25, 26). Accordingly, I will recommend that the complaint against these defendants be dismissed without prejudice under Fed.R.Civ.P. 4(m). See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

[2] "Nurse Aires" is referred to by defendants as "Nurse Ayers."

October 2002, he was stabbed twice by another inmate. Smith contends the defendants denied him adequate medical care for his injuries.[3]

Howard, Swafford, and Flaherty answered the complaint (Doc. Items 24, 31) and filed a motion for summary judgment, accompanied by documentary exhibits, affidavits, and a statement of undisputed facts (Doc. Items 33, 36), to which Smith filed briefs in response (Doc. Items 35, 36). Defendants' motions are now before the court for disposition.

## Law and Analysis

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so

---

[3] Smith's claim that defendants failed to protect him from the inmate who attacked him was dismissed with prejudice (Doc. Item 13).

2

respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959). However, mere conclusory

allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Failure to Protect - Defendants Howard and Swafford

Smith's claim that defendants Howard and Swafford failed to protect him from an attack by another inmate was dismissed with prejudice (Doc. Item 13), but Smith's action against Howard and Swafford was not dismissed. Since that was the sole claim made against defendants Howard and Swafford, Howard and Swafford's motion for summary judgment should be granted and Smith's action against Howard and Swafford should be dismissed with prejudice.

Denial of Medical Care - Defendant Flaherty

Smith contends Dr. Flaherty denied him adequate medical care for his stab wounds by failing to refer him to an orthopedist until it was too late to correct the contracture in his finger.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer

4

v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Since an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291, or a disagreement between the inmate and the staff as to the medical treatment given, Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). However, a prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

Smith alleges that, on October 18, 2001, he was stabbed twice by another inmate and suffered injuries to his neck and his right index finger. In his first amended complaint (Doc. Item 5), Smith alleges that, after the attack, he was taken to the infirmary, examined by Nurse Aires, and then taken to the segregated cell block. Smith further alleges that he made "numerous" sick-call requests but was not seen again until November 12, 2001, when Nurse Creed prescribed Motrin (Doc. Item 5). On November 1, 2001, Smith saw Dr. Flaherty for a dandruff problem; when he tried to tell her about his finger, also, she refused to listen so he insisted on leaving the infirmary immediately. On November 15, 2001, Smith was examined by Dr. Patricia Flaherty, who referred Smith to the

hospital for tendon repair to his right hand little finger (Doc. Item 5). On December 4, Smith asked the Nursing director, Ms. Thomas, about his hospital appointment and, on December 26, 2001, was told by Nurse Spenser that an appointment had been made (Doc. Item 5). On February 10, 2002, Smith was again told he was on the doctor call-out list (Doc. Item 5). On February 20, 2002, Smith was examined at E.A. Conway Hospital, where he was told it was too late to correct the problem with his little finger; Smith contends he has lost the use of his little finger (Doc. Item 5).

In her statement of undisputed facts and affidavit, Dr. Flaherty shows another inmate inflicted a small puncture wound to Smith's right little finger on October 18, 2001 (Doc. Item 33). Dr. Flaherty further shows, although memorialized the examination, she did not mention or otherwise note a wound to Smith's finger (Doc. Item 33). Dr. Flaherty states, in her statement of undisputed facts and affidavit, that she did not learn of the wound to Smith's right little finger until about November 15, 2001, when she examined Smith pursuant to a sick call request he made on November 10, 2001; Dr. Flaherty shows the November 10, 2001 sick call request was the only one Smith made for his right little finger (Doc. Item 33). Nurse Creed examined Smith on November 12, 2001, and referred Smith to Dr. Flaherty, who examined Smith on November 15, 2001 (Doc. Item 33, Ex. B). On examination of Smith's finger, Dr. Flaherty immediately referred Smith to E.A. Conway

Hospital on a non-emergency basis for an orthopedic examination (Doc. Item 33). Dr. Flaherty states Smith's finger was already contracted on November 10, 2001, and the wound was well-healed (Doc. Item 33). Dr. Flaherty further states she had no control over when E.A. Conway scheduled Smith's appointment, she used her professional medical judgment and discretion in making the appointment on a non-emergency basis, and she did not delay Smith's treatment at E.A. Conway (Doc. Item 33). According to Dr. Flaherty, Smith's finger injury could have pre-existed the fight on October 18, 2001, since his scar appeared to be well-healed and mature (Doc Item 33, Ex. B).

WCC Health Administrator Patricia Thomas states in an affidavit that Smith only made one sick call request concerning his little finger, on November 10, 2001, and that, after Dr. Flaherty referred Smith for an outside consultation on a non-emergency basis, the hospital scheduled the appointment (Doc. Item 33, Ex. C). Thomas further states in her affidavit that the doctor at E.A. Conway Hospital placed a "coil spring" splint on Smith's finger and scheduled him for three physical therapy sessions (Doc. Item 33, Ex. C).

Smith's medical records show that Nurse Aires treated the stab wound to the back of Smith's neck and that he had no other injuries (Doc. Item 33, Ex. D-1). On November 1, 2001, Smith was examined for dandruff and it was noted that he was angry and asked to leave

(Doc. Item 33, Ex. D-3). On November 10, 2001, Nurse Creed noted that Smith's right *index* finger was disfigured from a knife cut incurred on October 18, 2001, and that Smith could not straighten his finger out (Doc. Item 33, Ex. D-4). On November 12, 2001, Nurse Creed saw Smith again, and noted again that Smith's right *little* finger had been cut, was contracted about 45 degrees and tender, prescribed Smith Motrin, and again referred Smith to the doctor (Doc. Item 33, Ex. D-5). Dr. Flaherty's notes on November 15, 2001, show that Smith told Dr. Flaherty he injured his right little finger on October 18, 2001, but forgot to tell her about it the last time she examined him (Doc. Item 33, Ex. D-7). Dr. Flaherty further noted Smith's right little finger was contracted at the proximal interphalangeal joint, and that he had a well healed scar that looked mature; Dr. Flaherty referred Smith for an orthopedic consultation (Doc. Item 33, Ex. D-7).

Smith was examined in the orthopedic clinic on February 15, 2002, an injury to his PIP joint was noted, and he was referred to the physical therapy unit for a brace (a coil splint) (Doc. Item 33, Ex. D-10). Smith was seen by a physical therapist at E.A. Conway Hospital on February 19, 2002, and a brace was put on his finger; on February 20, 2002, Smith reported pain in his finger since wearing the brace (Doc. Item 33, Ex. D-7). Smith was seen in the orthopedic clinic again on February 28, 2002, and was referred for physical therapy (Doc. Item 33, Ex. 11).

Smith contends in his complaint that Dr. Flaherty is liable to him because she sent him to the orthopedist too late for him to correct the problem with Smith's right little finger. However, Smith's medical records clearly show that Smith's finger was already contracted, with a well healed, mature scar, when Dr. Flaherty saw him on November 15, 2001. Moreover, Smith's medical records do not indicate his little finger was injured on October 18, 2001; the only injury noted after the fight was the cut on his neck. Finally, the medical records show that Smith did not request medical care for his finger until November 10, 2001.

It appears that Smith's own delay in seeking medical care caused the allegedly irreversible contracture in his finger, rather than anything done or not done by Dr. Flaherty. When Smith finally did seek medical care for his finger, Dr. Flaherty appropriately referred him for an orthopedic consultation on a non-emergency basis. Nothing in Smith's medical records indicates the condition of Smith's finger changed between November 15, 2001, when Dr. Flaherty examined him, and February 14, 2001, when the orthopedist examined him.

Although Smith contends, in his opposition to the motion for summary judgment, that Dr. Flaherty refused to listen to his complaints as to his finger on November 1, 2001, when she examined him for dandruff, Dr. Flaherty' notes do not indicate that Smith complained to her about his finger (see Doc. Item 33, Ex. D-3).

Moreover, even accepting Smith's contention as true, the fact remains that Smith could have requested a medical examination of his finger any time after October 18, 2001, when his finger was allegedly injured, but did not do so until November 10, 2001, when his finger was already healed and contracted.

Since Smith has not shown that Dr. Flaherty intentionally denied or delayed medical care for Smith's little finger, or that any such denial or delay caused the contracture of his right little finger, Smith has not shown that Dr. Flaherty was deliberately indifferent to his serious medical needs. Since there are no genuine issues of material fact which would prelude a summary judgment, Dr. Flaherty's motion for summary judgment should be granted and Smith's action against Dr. Flaherty should be dismissed with prejudice.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Dr. Flaherty's motion for summary judgment be GRANTED and that Smith's action against Dr. Flaherty be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Smith's complaint against McNeil, Woods, Green, Copeland, and Aires be DISMISSED WITHOUT PREJUDICE for failure to effect service.

IT IS ALSO RECOMMENDED that Howard and Swafford's motion for summary judgment be GRANTED and that Smith's action against Howard and Swafford be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of August, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

11